# EXHIBIT D

DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ESTEBAN PEREZ, FELIPE GALINDO, and        17-CV-7837
DELFINO LOPEZ,

                      **Plaintiffs,**

        -against-

50 FOOD CORP. (D/B/A SILO CAFÉ) and
ANDREW SUNG (AKA HWAN SEUNG SUNG),
                      **Defendants.**
------------------------------------------------------------x

## AFFIDAVIT OF PLAINTIFF DELFINO LOPEZ

County of Queens    )
                          ) ss:
State of New York   )

Delfino Lopez does hereby declare under penalty of perjury:

1. My name is Delfino Lopez. I am a Plaintiff in the above referenced matter.

2. In April of 2009, I began working at Silo Café located at 805 Third Avenue in Manhattan. I understand that this business is known as "50 Food Corp".

3. I found the job at Silo Café through an employment agency.

4. At the employment agency, I was told that I would be paid $450 per week for fifty hours of work.

5. When I arrived at Silo Café, I spoke with a Korean man, who introduced himself as the manager. I do not remember his name. I will refer to him as "Manager Y". During the initial meeting, "Manager Y" did not give me much information. He did not tell me what my wages would be, but I needed the job badly so I didn't press the issue.

6. I worked under "Manager Y" for two months.

7. After "Manager Y" left Silo Cafe, my direct supervisor was Andrew Sung, who I understood to be the owner of Silo Café.

8. During the time I worked under Sung's supervision, Sung paid me and oversaw my work. I understood that he had the power to discipline and fire me.

9. After several months of working directly under Sung, Dennis was hired as the manager of 50 Food Corp. and he became my direct supervisor. I only knew him as "Dennis", but I have been advised that his real name is Minchul Kim.

10. After Kim took over as manager, Sung continued to come by once or twice per week. I didn't have much contact with Sung after Kim became manager.

11. During the first two weeks of my employment at 50 Food Corp., I worked form 9 a.m. to 1 p.m. and I was paid $150.00 in cash for the two weeks.

12. After the first two weeks, I began working fifty hours per week, Monday to Friday from 6:00 a.m. to 4:00 p.m.

13. I continued to work this fifty hour schedule until early 2016 when my hours were cut.

14. Throughout my employment at 50 Food Corp., I typically took a thirty-minute lunch break and fifteen minutes for a coffee break in the morning.

15. After the first two weeks, I earned $450 per week for fifty hours of work, just as I was told by the employment agency.

16. In the fall of 2014, I received a raise of $480 per week.

17. I received a final raise of $500 in September of 2017.

18. At the time of these raises, I never received any documents confirming my new pay rates.

19. Throughout my employment at 50 Food Corp., I was always paid in cash.

20. After 2016, all of the workers had their hours cut.

21. After 2016, my schedule was Monday through Friday from 7:00 a.m. to 3:00 p.m.

22. Beginning in 2012, Kim began to have us sign a paper when we received our weekly pay. I will refer to these documents as "weekly payment reports".

23. He told us that we had to sign the weekly payment reports each week in order to receive our pay.

24. I admit that I never closely reviewed the weekly payment reports. I never compared the amounts in the weekly payment reports with the weekly salary I received. I signed the weekly payment reports quickly because I understood that I didn't have a choice if I wanted to get paid.

25. After we signed the weekly payment reports, Kim kept it and did not give us a copy.

26. In or about 2014, I recall signing a document that listed the times I started and ended my work at Silo Café, which I will refer to as an attendance record. I only recall signing this attendance record once or twice in the year 2014. I cannot explain why there are many attendance records that include what purports to be my signature. I can only assume that some of those signatures have been forged.

27. On July 6, 2016, Kim required us to a sign document that I will refer to as a wage notice. I do not recall ever signing a document like this prior to July 6, 2016.

28. On October 3, 2017, I quit my job at 50 Food Corp.

I hereby swear under penalty of perjury that the above is true to the best of my knowledge and belief.

Dated:      September 18, 2018

Signed:     *Delfino Lopez*
            Delfino Lopez

The individual known to me to be Delfino Lopez appeared before me this 18th day of September, 2018, and affixed his signature to this document above.

Signed:     *Magdalena Barbosa*
            Notary Public

> MAGDALENA BARBOSA
> Notary Public, State of New York
> Registration #02BA6251040
> Qualified In New York County
> Commission Expires  11/19

### TRANSLATOR'S CERTIFICATE

I, Rebecca Rybaltowski, certify that I am fluent in both Spanish and English and that I have correctly and accurately translated this document from English to Spanish and that the above named person has assured me that he has understood this affidavit.

Dated:      September 18, 2018
Signed:     *Rebecca Rybaltowski*

The individual known to me to be Rebecca Rybaltowski appeared before me this 18 day of September, 2018, and affixed his/her signature to this document above.

Signed:     *Magdalena Barbosa*
            Notary Public

> MAGDALENA BARBOSA
> Notary Public, State of New York
> Registration #02BA6251040
> Qualified In New York County
> Commission Expires  11/19